**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIMOTHY VOLTER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 2:25-cv-2234** |
| **JAMES MARINE HAHNVILLE, LLC and JAMES TRANSPORTATION, LLC** | **SECTION: "L" (4)** |

**ORDER & REASONS**

Before the Court is a **Motion to Compel Physical Examination of Plaintiff Pursuant to Fed. R. Civ. P. 35 (R. Doc. 25)** filed by Defendants, James Marine Hahnville, LLC and James Transportation, LLC, seeking an Order from this Court compelling Plaintiff, Timothy Volter, to submit for an independent medical examination ("IME"). The motion is opposed. R. Doc. 29. The motion was submitted for the Court's consideration on an expedited basis and was heard by oral argument on November 5, 2026. R. Doc. 32.

## I. Background

### A. Factual Background

Plaintiff Timothy Volter ("Plaintiff" or "Volter") is a former employee of Defendant James Marine Hahnville, LLC ("James Marine"). R. Doc. 1. Plaintiff alleges that he was employed as a U.S. Coast Guard-licensed merchant mariner and Jones Act seaman aboard the M/V TOM ROGERS and the barge WT002—vessels allegedly owned, operated, and/or chartered by James Marine on the inland rivers of the State of Louisiana. *Id.*

Plaintiff contends that as of May 12, 2025, the M/V NICK BURFORD was a vessel owned and operated by Defendant James Transportation, LLC d/b/a Tennessee Valley Towing ("James Transportation"). *Id.* Plaintiff contends that the NICK BUFORD underwent repairs at James Marine's facility. *Id.*

Further, Plaintiff contends that on May 12, 2025, he was instructed to pump diesel fuel—which was temporarily housed in the barge WT002—to the NICK BUFORD. *Id.* Plaintiff contends that he prepared the pump and fuel line while the NICK BURFORD crew attached the fuel line to the vessel. *Id.* Plaintiff contends that while the refueling occurred, stored pressure and diesel in the fuel line exploded and nearly knocked Plaintiff into the Mississippi River. *Id.* Plaintiff alleges that he sustained significant emotional and physical injuries to his back, knees, shoulder, and other parts of his body. *Id.*

On October 31, 2025, Plaintiff filed suit against Defendants James Marine and James Transportation (collectively "Defendants"). *Id.* Plaintiff alleges that Defendants are responsible for his injuries and his inability to return to work. *Id.* Plaintiff alleges violations of the Jones Act, 46 U.S.C. § 30104, and alternatively, the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b).

Defendants contend that Plaintiff's claims under the LHWCA are pending in a separate proceeding before the U.S. Department of Labor and have been assigned OWCP File No. 07601782. R. Doc. 25-1 at 5 n.8.

**B. <u>Subject Motion to Compel Physical Examination of Plaintiff</u>**

Defendants contend that in the LHWCA proceeding, James Marine's insurer, American Equity Underwriters ("AEU"), requested that Plaintiff undergo two physical examinations. R. Doc. 25-1 at 13. The first examination required by AEU was conducted by Dr. Douglas Lurie on September 30, 2025. *Id.* The second examination required by AEU was conducted by Dr. Donnis Harrison on May 4, 2026. *Id.* at 14.

Defendants contend that they were uninvolved in the previous medical examinations, and additionally that AEU's interests are adverse to Defendants in this litigation. *Id.* at 12. AEU has

asserted a lien of $50,000 over Plaintiff's recovery in the instant action. *Id.*; *see also* R. Doc. 25-3 (AEU's Notice of Lien correspondence to Defendants on June 11, 2026).

Defendants contend that on October 14, 2026, they learned for the first time from Plaintiff's expert reports that Plaintiff's treating surgeon, Dr. Charles Haddad, was recommending a new surgery (*i.e.*, a total left knee replacement) which had allegedly never been disclosed to Defendants and which is allegedly not reflected in any medical records produced by Plaintiff or obtained by Defendants to date. R. Doc. 25-1 at 6.

Defendants contend that on October 23, 2026, they requested a FED. R. CIV. P. 35 independent medical examination and conferred with Plaintiff's counsel. *Id.* at 7. On October 27, 2026, Defendants contend that Plaintiff agreed to attend the requested examination, confirmed in writing. *Id.* Defendants contend that they scheduled an examination with Dr. Scott Buhler, a board-certified orthopedic surgeon in the New Orleans area (*i.e.*, where Plaintiff lives), for November 9, 2026. *Id.* Defendants contend that during a telephone conference on October 27, Defendants informed Plaintiff's counsel that the date of the examination would be November 9, 2026, and that Plaintiff's counsel agreed to attend. *Id.*

Defendants contend that on October 28, 2026, Plaintiff reneged on the agreement without just cause. *Id.* According to emails exchanged between the parties, Plaintiff's counsel reneged on the agreement because Plaintiff has undergone two previous medical examinations as requested by Defendant James Marine's insurer, AEU. R. Doc. 25-2.

On November 2, 2026, Defendants filed the instant Motion to Compel Physical Examination of Plaintiff Pursuant to Fed. R. Civ. P. 35. R. Doc. 25. Defendants contend that the two previous medical examinations were conducted in separate workers' compensation proceedings under the LHWCA. R. Doc. 25-1. Defendants contend that those examinations are

not sufficient because the physicians were also unaware of Plaintiff's prior left shoulder injury, pre-incident years of pain complaints and pain management through use of narcotics, and the recent total knee replacement surgery recommendation. *Id.* at 3. Defendants contend that this is the first IME requested and the only IME to be requested in the instant litigation. *Id.* at 10. Therefore, Defendants argue that Plaintiff should be compelled to attend the already-scheduled IME on November 9, 2026.

On November 4, 2026, Plaintiff filed his opposition. R. Doc. 29. First, Plaintiff contends that Defendants have already sent Plaintiff to two orthopedic surgeons of their choosing to evaluate the same knee and shoulder issues. *Id.* Plaintiff contends that it is irrelevant that the examination requests were tendered by AEU, because AEU is Defendant James Marine's hired representative as its insurer. *Id.* Plaintiff contends that AEU's lien does not affect this analysis. *Id.* Second, Plaintiff argues that Defendants' delay in requesting an examination shows that they intended to rely on the two already conducted IMEs, so the additional IME is not necessary. *Id.*

Third, fourth, and fifth, Plaintiff claims that Defendants can get everything they need through a supplemental review of Plaintiff's medical records, a deposition, and their own experts. *Id.* Plaintiff argues that a new surgical recommendation, standing alone, is not a change in circumstances that justifies another examination. *Id.*

On November 5, 2026, the Court considered the parties arguments in oral argument and analyzes the dispute as follows. R. Doc. 32.

## II. <u>Standard of Review</u>

Federal Rule of Civil Procedure 35 governs physical and mental examinations of a party during discovery. According to FED. R. CIV. P. 35(a)(1), the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a

suitably licensed or certified examiner." The court may order a party to submit for a physical examination only upon motion demonstrating good cause. FED. R. CIV. P. 35(a)(2)(A). If an order is issued, the court must give notice to all parties and the person to be examined, and the order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2)(B).

Rule 35 "should be liberally construed in favor of discovery." *Crumedy v. XYZ Ins. Co.*, No. 22-4570, 2023 WL 6293867, at *2 (E.D. La. Sept. 27, 2023) (citation omitted). It is within the district court's sound discretion whether to order an independent medical examination. *Glaze v. Bud's Boat Rental, Inc.*, No. 93-1334, 1993 WL 441890, at *1 (E.D. La. Oct. 21, 1993) (citing *Coca–Cola Bottling v. Torres*, 255 F.2d 149 (5th Cir. 1958)), *aff'd*, 68 F.3d 472 (5th Cir. 1995).

The Court uses a two-part test to determine whether a Rule 35(a) motion will be granted. First, the moving party must show that the physical or mental state of the party to be examined is in controversy. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119.

Second, the moving party must demonstrate good cause. "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and an inability to obtain it elsewhere. *Id.* at 118. Rule 35 does not limit the number of examinations so long as "good cause" is shown for each exam. *Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. Nov. 2, 2009) (as cited in *Campbell v. Helmerich & Payne, Inc.*, 2025 WL 1891681, at *4 (M.D. La. June 20, 2025)); *see*

FED. R. CIV. P. 35. Good cause generally exists in every case where the plaintiff is claiming personal injuries. *Schlagenhauf*, 379 U.S. at 118.

## III. Analysis

Defendants contend that there is good cause to order an IME of the Plaintiff because this is the first Rule 35 IME that Defendants have requested in the instant litigation. Defendants contend that the two physical examinations conducted were ordered by a non-party, AEU, whose interests are adverse to Defendants' in this litigation because AEU has claimed a lien over Plaintiff's recovery. Additionally, Defendants find the previous examinations insufficient because they were conducted for workers' compensation purposes, not for litigation. Therefore, Defendants contend that the examining physicians, Drs. Lurie and Harrison, did not consider all information relevant to defending against Plaintiff's claims in this litigation, including Plaintiff's past injuries and pain medication use, as well as Dr. Haddad's new recommendation for total knee replacement surgery.

Plaintiffs conversely characterize the previous two workers' compensation physical examinations as having been requested by Defendants. Plaintiffs characterize Defendants' current Rule 35 request as the potential third examination in this litigation. Plaintiff therefore contends that Defendants must make a heightened showing of good cause to be entitled to an additional examination. Plaintiff further argues that Defendants cannot make such a showing, and that Defendants should be required to use information which already exists from the previous two examinations.

First, it is undisputed and clear to the Court that the conditions of Plaintiff's knee and shoulder are "in controversy" because his complaint centers on those injuries and Defendants dispute the causation of such injuries. Thus, Plaintiff's physical condition is in controversy.

As to the second element of good cause, the Court reiterates that Rule 35 does not explicitly limit the number of examinations a party may be required to undergo. *Jackson v. Entergy Operations, Inc.*, No. 97-943, 1998 WL 28272, at *2 (E.D. La. Jan. 26, 1998) (citation omitted). Where a party requests authorization for more than one IME, each request "must turn on its own facts, and the number of authorized examinations depends solely upon the circumstances underlying the request." *Crumedy*, 2023 WL 6293867, at *3 (citing *Jackson*, 1998 WL 28272, at *2 (citation omitted)). "When the *moving party* has already obtained an IME, courts require a stronger showing of necessity, and the party seeking the examination always bears the burden of showing good cause to order additional examinations." *Id.* (citing *Case v. JFP Offshore, Inc.*, No. 95-3239, 1996 WL 210720, at *1 (E.D. La. Apr. 29, 1996)) (emphasis added).

Here, according to the record, Defendants have not obtained an IME in the instant litigation.[1] Plaintiff has undergone two physical examinations, but they were conducted at the request of James Marine's insurer, AEU, for purposes of workers' compensation. No evidence suggests that either Defendants James Marine or James Transportation had any input into AEU's choice of examiner or the scope of the examination.[2] Thus, the Court finds no reason to believe that Defendants have already obtained two IMEs in the instant litigation.

Further, this Court and other courts in the Fifth Circuit "consistently reject the notion that a workers' compensation carrier's pre-suit examination precludes an IME by the defendant in a later suit." *Id.* at *5 n.32.[3] Here, one worker's compensation examination was conducted pre-suit

---

[1] Before authorizing a second IME, "the court must determine whether the defendant has already obtained an examination and report enabling a sufficient defense of plaintiff's claims." *Crumedy*, 2023 WL 6293867, at *3.

[2] *See McGaughey v. Petty*, No. 12-1902, 2013 WL 3490973, at *3 (E.D. La. July 10, 2013) (Roby, M.J.) (granting defendants' request to compel plaintiff to appear for an IME because defendants had no involvement in the previous physical examination which was requested by the insurer for purposes of workers' compensation).

[3] *See e.g.*, *All Coast LLC v. Shore Offshore Servs., LLC*, No. 21-258, 2023 WL 4996551 (E.D. La. July 7, 2013) (rejecting argument that pre-suit worker's compensation examination constituted IME and finding spoliation and recommending sanctions against plaintiff who underwent surgery after defendants requested an IME); *Broussard v.*

on September 30, 2025, and the other was conducted after the commencement of this litigation on May 4, 2026. The examination conducted on September 30, 2025, precedes the instant action which was filed on October 31, 2025. R. Doc. 1. Therefore, the September 30, 2025, examination conducted by Dr. Lurie does not preclude Defendants from requesting an IME in this litigation.

As for the second workers' compensation examination conducted during this litigation on May 4, 2026, the Court finds that this examination does not sufficiently enable Defendants to adequately defend Plaintiff's claims in this suit. In the past, this Court has adopted the approach that a second examination by a physician in the same area of expertise is not necessary when it would be "duplicative of other examinations that sufficiently enable the defendant to adequately defend the suit." *Crumedy*, 2023 WL 6293867, at *3 (citing *Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2015 WL 12670377, at *2 (E.D. La. Nov. 17, 2015) (citation omitted)). Here, Drs. Lurie and Harrison are both orthopedic surgeons, but who examined the Plaintiff in the workers' compensation claim. R. Doc. 29 at 2. Dr. Buhler, who Defendants wish to have examine Plaintiff on November 9, 2026, is also an orthopedic surgeon. R. Doc. 25-1 at 7.

Notably, however, Defendants contend that the previous two examinations do not contemplate several pieces of information that Defendants claim are central to building their defense against Plaintiff's claims. These pieces of information include the knowledge of Plaintiff's prior left shoulder injury, Plaintiff's pre-incident years of pain complaints and pain management through use of narcotic pain medication, and Dr. Haddad's recent recommendation for total knee replacement. *Id.* at 3. It is "not much of a concern in workers' compensation cases" to analyze a

---

*Farmers Tex. Cnty. Mut. Ins. Co.*, No. 19-603, 2021 WL 6091795, at *3 (W.D. La. Nov. 9, 2021) (rejecting argument that comp carrier's expert should be deemed defense expert for purposes of establishing good cause for Rule 35 examination because intervenor only recovers if plaintiff recovers and is commonly aligned with plaintiff); *Bruce v. Baywater Drilling, LLC*, No. 16-168, 2016 WL 3149719, at *3 (M.D. La. June 3, 2016) (rejecting argument that pre-suit examination by physician chosen by worker's compensation carrier constitutes a first examination because a pre-suit worker's compensation examination is not conducted under Rule 35).

Plaintiff's pre-accident condition or how pre-existing conditions may affect current pain levels and abilities. *Rolfe v. Ace Am. Ins. Co.*, No. 19-720, 2019 WL 5914817, at *1 (W.D. La. Dec. 14, 2021) (granting defendants' request for a Rule 35 IME by an orthopedic surgeon even though an orthopedic surgeon had examined plaintiff for workers compensation purposes already). Here, the Court finds that Defendants' request for a Rule 35 IME is not duplicative because it would assess new information regarding Plaintiff's pre-existing conditions, pain management, and new surgery recommendations.

Finally, although the ability to obtain information from other sources "is pertinent to the inquiry [of good cause], a plaintiff may not avoid a Rule 35 examination simply on the grounds that other sources of information, such as medical reports and statements by plaintiff's treating physicians, are available." *Crumedy*, 2023 WL 6293867, at *3 (citing *Ornelas v. Southern Tire-Mart*, 292 F.R.D. 388, 392 (S.D. Tex. Mar. 28, 2013) (citing cases)). Here, Plaintiff attempts to avoid a Rule 35 IME by arguing that Defendants can instead rely on records from his previous examinations, depositions, and their own expert witnesses. The Court does not find this argument persuasive given that Defendants have not requested a single Rule 35 IME thus far in this litigation and because the previous two physical examinations were conducted for purposes of workers' compensation and therefore do not provide Defendants with enough information to build their defense against Plaintiff's claims here.

When considering all the above, the Court finds that the Defendants have stated good cause for a Rule 35 IME by an orthopedic surgeon of their own choosing.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion to Compel Physical Examination of Plaintiff Pursuant to Fed. R. Civ. P. 35 (R. Doc. 25)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff shall attend the independent medical examination already organized by Defendants on November 9, 2026.

New Orleans, Louisiana, this 6th day of November 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**